UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. WHARTON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>NEDRA CHANDLER, Warden, )<br>Dixon Correctional Center, )<br>)<br>Respondent. )<br>) | Case No. 12-CV-703<br><br>Judge John W. Darrah |

# **MEMORANDUM OPINION AND ORDER**

Petitioner, Robert L. Wharton, has filed a Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254. For the reasons provided below, his Petition is denied. The Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## **BACKGROUND**

On January 25, 2007, Petitioner Robert L. Wharton was indicted in the Circuit Court of DuPage County, Illinois, in case number 07 CF 46 ("case '46") on one count of predatory criminal sexual assault of a child, two counts of aggravated criminal sexual abuse, and seven counts of child pornography. (Dkt. No. 66, Ex. J at 1-11.) The following month, on February 8, 2007, Petitioner was indicted in the same court in case number 07 CF 256 ("case '256") on one count of aggravated criminal sexual abuse. (*Id.* at 12.) On July 30, 2008, Petitioner pled guilty in an agreement covering both cases to one count each of aggravated criminal sexual abuse and predatory criminal sexual assault of a child. (Dkt. No. 49 at 6-7.) In exchange for his plea, the State agreed to dismiss the

remaining counts of case '46, with no additional agreements. (*Id.* at 3-4.) Petitioner was represented by retained counsel, Michael Norris, from the indictment up to and including sentencing. (Dkt. No. 55 at 1.)

During the July 30 change of plea hearing, the trial court asked Petitioner whether he understood that he was pleading guilty to aggravated criminal sexual abuse, "which is punishable by three to seven years in the Illinois Department of Corrections followed by two years of mandatory supervised release," and predatory criminal sexual assault of a child, "which is punishable by six to thirty years in the Illinois Department of Corrections followed by mandatory supervised release that could be for the rest of your life." (Dkt. No. 49 at 4.) The Petitioner responded affirmatively. (*Id*. at 4.) When asked whether the Petitioner's medications, Lipitor or SimQuell, affected his ability to understand the proceedings, Petitioner responded, "No, ma'am." (*Id*. at 5.) Directly before Petitioner was asked how he would plead, he was asked whether anyone "promised [him] anything in order to get [him] to plead guilty other than the dismissal of certain charges here," and he responded, "No." (*Id.* at 6.)

The State provided in the factual basis for the plea to predatory criminal sexual assault of a child that Petitioner was sixty-three years old and that the victim was five years old. (*Id*. at 8.) The victim was Petitioner's neighbor, who stated that Petitioner had taken pictures of and touched the victim's genitals. (*Id*.) Petitioner "acknowledged taking various photographs of [the victim] while she was naked in provocative poses; and, further, that he admitted placing his finger in the sex organ of [the victim]." (*Id*. at 9.) The State then provided the factual basis for the plea to aggravated criminal sexual

abuse, again beginning by noting Petitioner's age and the age of the victim, in this case ten years old. (*Id*.) This victim was also Petitioner's neighbor, and was in her basement during a family party when Petitioner approached her and "put his hand down her pants making skin-to-skin contact with her sex organ." (*Id*. at 9-10.) Petitioner stipulated to these facts and, after the trial court received an affirmative response from Petitioner as to whether he understood the sentences would run consecutively, the Petitioner's plea was found to have been "knowingly and voluntarily made." (*Id*. at 10.)

On November 26, 2008, Petitioner's sentencing hearing was held, and the State offered in aggravation witness testimony regarding additional victims (Dkt. No. 50 at 9-14), victim impact statements read by the victims' parents (*Id*. at 17-26), and pornographic photos possessed by Petitioner (*Id*. at 7-8). Norris did not object or subject any State's witness to cross-examination. (*Id*.) Detective Anthony Simpson testified that he found, pursuant to a valid search warrant, approximately 180 digital images of child pornography on Petitioner's flash drives, that the ten-year-old victim recalled to him another incident where Petitioner had fondled her breasts, and that two more adults had come forward and alleged Petitioner had sexually abused them when they were each seven-years-old. (Dkt. No. 65 at 17-18.) In mitigation, Norris offered character letters[1] and certificates of completion of various jail programs. (Dkt. No. 50 at 28.) Norris also

---

[1] Norris noted on the record that Petitioner's wife and three additional witnesses were present in the courtroom, but would not testify. (Dkt. No. 50 at 27.) Two of the witnesses, James Davies and Martin Sroka, submitted affidavits swearing they would have testified had they been called to do so, but were told by Norris that they would not be called, in order to avoid cross-examination by the State. (Dkt. No. 51, Exs. 3,4.) One character letter was authored by James Davies (*Id*. Ex. 5), but it is unclear from the record how many additional character letters were submitted, by whom, or who was the third witness present at the hearing.

argued that Petitioner saved the victims and their families from enduring a trial by pleading guilty. (*Id*. at 34.) Petitioner finally made his own statement, expressing remorse and arguing he was otherwise an upstanding citizen. (*Id*. at 35-36.) The State argued for consecutive sentences of 25 and 5 years, and Norris argued that, given Petitioner was sixty-three years old, the State's recommendation amounted to a death sentence, inconsistent with the sentencing range of 6 to 30 years. (*Id*. at 34-36.) Petitioner was sentenced to twenty years in the Illinois Department of Corrections in case '46, and four years in the Illinois Department of Corrections in case '256, the sentences to be served consecutively. (*Id.* at 38.)

On December 4, 2008, Petitioner filed a motion in the Circuit Court of DuPage County, *pro se*, to withdraw his plea and for reconsideration of his sentence, arguing ineffective assistance of counsel based on (1) an alleged promise made to him by Norris that Petitioner would receive only twelve years if he pled guilty, and (2) that Norris failed to call any of Petitioner's character witnesses. (Dkt. No. 51, Ex. 8.) Petitioner also moved for appointment of counsel. (*Id*.) On January 21, 2009, Petitioner's motion to appoint counsel was denied because of available home equity and pension interest, and Petitioner's motions to withdraw his plea and reconsider sentence were continued so that he would have time to hire an attorney. (*Id.* Ex. 9.)

On February 23, 2009, Petitioner filed an application to proceed as a poor person wherein he stated income of $60 per month and ownership of a home valued at $210,000, automobiles valued at $2,200, $7,000 in savings, and $500 per month pension. (Dkt. No. 52.) At the same time, Petitioner filed a motion for transcripts and common law records

which contained an attestation that Petitioner was "without financial means to pay for the report requested" in that he possessed no real estate, money or property sufficient for payment. (*Id*.) The trial court denied the motions based on the substance of Petitioner's acknowledged income and assets. (*Id*. Ex. 12.)

On April 9, 2009, Petitioner filed a *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. 5/122-1(a)(1), alleging the statutes he was convicted under were unconstitutional, that his counsel was ineffective, and improper application of Mandatory Supervised Release. (Dkt. No. 66, Ex. A.) Again, Petitioner filed a motion for appointment of counsel, this time averring an income of only $15 per month, and the previously identified home, vehicles, pension, and savings had been replaced by a single prison trust account containing $300. (Dkt. No. 52, Ex. 14.) The trial court again denied Petitioner's motion for appointment of counsel, noting that it had done so twice before because Petitioner's "net worth is, for purposes of appointment of the [P]ublic [D]efender, it's astronomical." (Dkt. No. 53, Ex. 17 at 3:12-14.)

Petitioner again moved to have counsel appointed on June 10, 2009, noting he "tried to obtain counsel and was willing to try and pay, but due to the severity of his case, lawyers are reluctant to represent him," and he attached letters from attorneys declining to represent him. (*Id*. Ex. 19.) This motion was denied for the same reasons it had been previously: that Petitioner had a house with over $200,000 of equity and a pension – Petitioner acknowledged both of these assets. (Dkt. No. 66, Ex. Y at 2:18-24.) The trial court reminded Petitioner that he had pending a motion to withdraw his guilty plea and a motion to reconsider his sentence, at which point the Petitioner withdrew his motion to

withdraw his guilty plea and asked to go forward, *pro se*, on his motion to reduce sentence alone. (*Id*. at 3:14-23.) Petitioner again articulated a desire to hire counsel, and the trial court set a hearing for the motion to reduce sentence. (*Id.* at 4.)

In a purported attempt to prepare for his hearing, Petitioner again moved for transcripts and common law records. (Dkt. No. 53, Ex. 20.) At his August 21, 2009 hearing, Petitioner's request for transcripts and common law records was denied. (*Id.* Ex. 21.) When the trial court asked Petitioner whether he had "at least $200,000 equity in a home in Elmhurst; isn't that correct?" petitioner responded "Yes." (*Id*. at 3:3-5.) Petitioner was allowed to argue his motion to reduce sentence, and the trial court denied the motion. (*Id.* at 17.)

Petitioner filed a notice of appeal on each of his cases on September 14, 2009. (Dkt. No. 54.) The cases were treated separately. (*Id.* Ex. 29.) Both cases were remanded on October 14, 2009, to the trial court to determine whether Petitioner was indigent and should be appointed counsel. (*Id*.)

Petitioner filed an application to defend as a poor person, and motions for appointment of counsel and transcripts and common law records in case '46. (Dkt. No. 66, Ex. K.) On December 1, 2009, the appellate court again remanded case '46 to the trial court for "specific findings of fact" relating to its finding Petitioner was not indigent.[2] Petitioner filed a *pro se* appellant's brief alleging trial court error or ineffective assistance of counsel for allowing him to plead to predatory criminal sexual assault without Petitioner having penetrated the victim. (*Id*. Ex. N.) However, Petitioner

---

[2] Both Petitioner and Respondent note that the appellate record contains no documents reflecting the findings made on this remand.

did not submit the record on appeal, and his motion to proceed without the record was denied because the court found "appellant's allegation of indigenc[e] in his unsigned, unverified motion to be contrary to his statements, in court . . . on August 21, 2009, wherein he acknowledged having over $200,000.00 equity in his Elmhurst home." (*Id*. Exs. O, P.) The appellate court dismissed case '46 solely because Petitioner had failed to file the record or a brief in compliance with Illinois Supreme Court Rules 341 and 342, and denied Petitioner's motion for rehearing on October 25, 2010. (*Id*. Exs. S, U.)

In case '256, shortly after the October 14, 2009, indigence remand, the appellate court ordered Petitioner to file a docketing statement and submit a $25 filing fee within seven days. (Dkt. No. 54, Ex. 32 at 3.) Petitioner's failure to comply with this order resulted in dismissal of case '256 on November 3, 2009. (*Id*. at 2.)

Petitioner filed a petition for leave to appeal ("PLA") in case '46 with the Illinois Supreme Court on December 6, 2010, and he was allowed to proceed as a poor person based on his status as an inmate. (Dkt. No. 66, Ex. W.) At this stage, Petitioner raised three issues: (1) that the appellate court erred in dismissing his case for lack of a record and failure to file in compliance with Illinois Supreme Court Rules; (2) that the appellate court was erroneous in holding Petitioner not indigent; and (3) that the trial court erred in allowing him to plead to criminal predatory sexual abuse in the alleged absence of penetration of the victim. (Dkt. No. 54, Ex. 34.) On January 26, 2011, the Supreme Court of Illinois denied Petitioner's PLA. (*Id*. Ex. 35.)

Petitioner filed a *pro se* petition for writ of *habeas corpus* in both case '46 and case '256 on January 23, 2012, in this Court. In it, Petitioner asserted six grounds on which he was unlawfully held:

(1) Trial counsel was ineffective for allowing Petitioner to plead to criminal predatory sexual assault without proof of penetration in the factual basis;

(2) The judgment was void because the State did not prove penetration;

(3) Trial court erred by allowing Petitioner to plead guilty to a crime he did not commit;

(4) The trial court did not comply with the Illinois Post-Conviction Act;

(5) Trial and appellate courts violated Petitioner's right to counsel on post-conviction review; and

(6) Trial and appellate courts violated Petitioner's right to transcripts on post-conviction review.

On July 24, 2012, Petitioner's motion for appointment of counsel was granted by this Court, and Petitioner was given leave to file an amended petition. On June 5, 2013, Petitioner filed an Amended petition for writ of *habeas corpus*, asserting four claims:

(I) Petitioner was denied counsel and transcripts with respect to his withdrawal of guilty plea and reconsideration of sentence;

(II) Petitioner was denied counsel and transcripts with respect to his petition for post-conviction relief;[3]

(III) Petitioner's counsel was ineffective at sentencing; and

(IV) Petitioner's counsel was ineffective in advising Petitioner what sentence he would receive.

---

[3] Petitioner combines Claims I and II in a single claim of denial of counsel and transcripts "at post-sentencing proceedings." (Dkt. No. 55 at 11.) The claims are separated here for clarity.

8

**LEGAL STANDARD**

A state court's decision does not provide grounds for *habeas corpus* relief from the federal court unless that decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Relief from a state court decision under the "contrary to" clause is available in two ways: when the decision runs counter to the decisions of the United States Supreme Court on a question of law, or when the state court rules differently than the United States Supreme Court on a set of "materially indistinguishable" facts. *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

The "unreasonable application" clause also is considered in one of two ways. The first arises when the state court correctly identifies the controlling legal principle, but applies it to the case unreasonably. *Id*. at 407. The second involves the state court "unreasonably extends a legal principle . . . to a new context where it should not apply," or "unreasonably refuses to extend that principle to a new context where it should apply." *Id.* This standard does not demand merely that application be incorrect, but "objectively unreasonable." *Id*. A law's application need only be "minimally consistent with the facts and circumstances of the case." *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir. 2012) (internal quotation marks and citation omitted).

Because state-court rulings are reviewed in such a deferential light, the burden of proof rests with the petitioner. *Cullen v. Pinholster*, 131 S. Ct. 1388. To overcome the

presumption of correctness afforded state-court decisions, the petitioner must provide "clear and convincing evidence." *Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

A person in custody pursuant to state-court action may not petition for a writ of *habeas corpus* until he has exhausted all remedies available to him in state court. 28 U.S.C. § 2254(b)(1)(A). The petitioner is required to assert his claim at every level in the state-court system, "including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Otherwise, a claim is procedurally defaulted. *Id*. "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan*, 526 U.S. at 848).

An otherwise defaulted claim can be saved by showing either (1) cause for the default and prejudice or (2) that ignoring the default is necessary to prevent a fundamental miscarriage of justice. *Id*.

The first exception requires the petitioner to identify "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quotation marks and citation omitted). The petitioner must also show that prejudice "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A miscarriage of justice arises only in cases of "actual innocence," in which a petitioner is required to show that "more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 513, 538 (2006).

Petitioners for federal *habeas* relief must file their claims within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, this time may be tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C § 2244(d)(2). Alternatively, the time limitations may be equitably tolled if the petitioner "has been pursuing his rights diligently" and shows that "some extraordinary circumstance stood in his way." *Weddington v. Zatecky*, 721 F.3d 456, 464 (7th Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631 (2010)).

## ANALYSIS

As Petitioner fails to specify which arguments attach to which case, it is assumed that all arguments are intended to apply to both cases '46 and '256. However, because the two cases at issue were not identical procedurally, each must be analyzed individually.

*Timeliness*

The one-year limit imposed on filing an application for writ of *habeas corpus* begins to run on the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Direct review concludes when "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition

for certiorari ha[s] elapsed. . ." *Teague v. Lane*, 489 U.S. 288, 295 (1989) (quotation marks and citation omitted).

Although Illinois Supreme Court Rule 315(b) requires a party seeking to file a petition for leave to appeal ("PLA") with the Illinois Supreme Court to do so within thirty-five days after the entry of the order denying the petition for rehearing, the period for petitioning the United States Supreme Court for certiorari is ninety days from the day judgment is entered by a state court of last resort. 28 U.S.C. § 2101(c). Because section 2244 runs from the latest date for seeking direct review "whether or not a petitioner chooses to avail himself or herself of that opportunity," the expiration of the ninety day period marked the beginning of the one year limitation. *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

In case '256, judgment was rendered by the Illinois Appellate Court on November 3, 2009, when it dismissed Petitioner's case for failure to file a docketing statement or pay the $25 docketing fee. Therefore, Petitioner's opportunity to file a PLA expired on December 8, 2009, resulting in a deadline of December 8, 2010, to file his petition for writ of *habeas corpus*. This Court received the petition for writ of *habeas corpus* on January 30, 2012, with a postmark date of January 26, 2012.[4]

Therefore, Petitioner had no applications for review outstanding with respect to case '256 once the Illinois Appellate Court dismissed the case. Equitable tolling is equally unavailable as Petitioner has not demonstrated the diligent pursuit of his rights

---

[4] Respondent calculates the timeliness of Petitioner's filing based on a petition filed date of January 23, 2012. Petitioner does not refer to a filing date for this petition. It is unclear how Respondent arrived at her date.

12

and that extraordinary circumstances prevented timely filing. Because the petition was filed over a full year past the Section 2244 limitation with respect to case '256, it is untimely and that case is dismissed.

Case '46, however, was tolled through the Illinois Supreme Court's denial of the petition as a matter of right or petition for leave to appeal on January 26, 2011. After the addition of the ninety day period in which to petition the United States Supreme Court for certiorari, Petitioner's one year limitation pursuant to Section 2244 began April 26, 2011. The petition for writ of *habeas corpus* filed on January 26, 2012, as it applies to case '46, was timely. However, the amended petition (set out above) was filed on June 5, 2013, and Claims I, III, and IV were not in the earlier January 26, 2011 petition.

A new claim in an amended petition only relates back to the timeliness of the original claim when it does not assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Simply arising from the same trial, conviction, or sentence is not enough to dictate a claim relating back to one timely filed. *Id.* at 662.

Although "there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief," *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002), the petitioner must show a "common core of operative facts" for a new ground to relate back. *Mayle*, 545 at 650. Claim I is based on denial of counsel and transcripts related to Petitioner's motions to withdraw his plea and reconsider his sentence. However, the original Petition raised the issue of denial of counsel and transcripts only with respect to Petitioner's post-conviction relief. The facts associated

with the motions to withdraw plea and reconsider sentence differ in both time and type from those of the petitions for post-conviction relief. Therefore, Claim I does not relate back and is time-barred.

Claim II is based on denial of counsel and transcripts with respect to post-conviction relief. As this issue was raised directly in the original Petition, Claim II is not time-barred. Claim III asserts Norris provided ineffective counsel at the sentencing hearing, and Claim IV that Norris improperly advised Petitioner as to the sentence he would receive. The original Petition asserted ineffective assistance only with respect to Norris "allow[ing] [P]etitioner to enter a plea of guilty" to a crime Petitioner did not commit. (Dkt. No. 6 at 5.) In other words, the original Petition raised the issue of ineffective assistance only in relation to the change of plea hearing. Accordingly, Claim III does not relate back and is time-barred, as it concerns the entirely separate sentencing hearing. However, Claim IV does relate back to the original Petition because it arises from the common core of operative facts involving ineffective assistance of counsel during the change of plea. Therefore, Claims II and IV survive a challenge for timeliness.

*Procedural Default*

However, Claim IV is defaulted because Petitioner did not raise it at each and every level of the state-court system. *O'Sullivan*, 526 U.S. at 845. Petitioner raised only post-conviction petition claims in the Illinois Court of Appeals, not whether his counsel improperly advised him as to his sentence. "A petitioner 'must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he

will forfeit federal review of the claim.'" *Rittenhouse v. Battles*, 263 F.3d 689, 695-96 (7th Cir. 2001) (quoting *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001)).

Whether Claim IV can be saved depends on the Petitioner's ability to identify a specific cause for his failure to allege the claim and show how a "fundamental miscarriage of justice" results if Claim IV is defaulted. *McCann*, 474 F.3d at 930. Petitioner does not offer any cause for his failure to allege ineffective assistance of counsel at the appeals stage, even while he pursued his post-conviction petition claims. Nor does the doctrine of actual innocence apply. Not only does Petitioner fail to allege his innocence such that justice would be fundamentally at risk, he admitted his guilt.[5] Petitioner has thus forfeited his right to federal review on Claim IV.

Even if Claims III and IV were not procedurally defaulted, they have no merit. In order to show Norris was ineffective, Petitioner must show (1) that Norris was unreasonable "under prevailing professional norms"; and (2) that he was prejudiced as a result of Norris's errors. *Strickland v. Washington*, 466 U.S. 668, 688, 695 (1984). Establishing this prejudice requires a substantial – not merely conceivable – possibility that the outcome of the proceedings would have been different had Norris not committed the alleged errors. *Bailey v. Lemke*, 735 F.3d 945, 950 (7th Cir. 2013). Therefore, the trial court was reasonably applying *Strickland* when it held that Norris "argued effectively for [Petitioner] on [Petitioner's] behalf" given that Petitioner had presented

---

[5] The record regarding actual innocence is to the contrary, as set out above. Petitioner admitted to police that he had committed the aggravated sexual assault, and acknowledged the same during the plea colloquy.

"absolutely nothing new that was not brought out during the sentencing hearing." (Dkt. No. 53, Ex. 21 at 16-17.)

Further, Petitioner's assertion that Norris failed to properly offer mitigation evidence lacks support in the record and is contradicted by the outcome of the sentencing hearing. After the State argued for the maximum 30-year sentence, the trial court ordered 24 years, holding "I agree with Mr. Norris" with respect to mitigation for avoiding a trial and the Petitioner's lack of criminal history. (Dkt. No. 50 at 37.) Rather, the most substantial possibility of a different outcome would likely have been negative. Had Petitioner not pled guilty to two counts in exchange for dismissal of the remaining counts, and had instead proceeded to trial and was found guilty of all counts, he would have been subject to a sentencing range with a mandatory minimum of 37 years and a maximum of 142. (Dkt. No. 65 at 42.) Petitioner cannot reasonably show that counsel was ineffective because Petitioner elected to plead guilty. Far from prejudicing Petitioner, it is apparent from the record that Norris's strategy with regard to mitigation assisted Petitioner in receiving a lower sentence.

*Post-Conviction Relief as to Claim II in Case '46*

Petitioner's Claim II survives challenges of timeliness and procedural default, but it must be denied as it fails to state a cognizable claim for federal *habeas* relief. "There is no constitutional right to counsel in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Were there such a right to counsel, based on the record Petitioner has insufficiently alleged that he could not retain counsel himself.

In his first application to defend as a poor person, Petitioner attested to owning a home valued at $210,000, two vehicles valued at $2,200, $7,000 in savings, and a $500 per month pension. (Dkt. No. 52.) After the application was denied in light of these assets, Petitioner applied several more times. As mentioned above, Petitioner never represented that he was unable to pay an attorney's fee, but instead stated that "lawyers are reluctant to represent him" because of "the severity of his case." (Dkt. No. 53, Ex. 19.) The trial court even offered Petitioner the opportunity not to be transferred back to Dixon, Illinois, and to stay in the DuPage County Jail, where it would be easier to contact attorneys. (Dkt. No. 51, Ex. 9 at 3.) Although the *habeas* petition now includes an affidavit from Petitioner's wife, alleging she could not afford basic necessities if Petitioner were to use any of the assets, (Dkt. No. 54, Ex. 36), Section 2254(d) limits this review to whether the state court decision was reasonable with respect to the record before it.

A petitioner must have access to the "basic tools of an adequate defense or appeal," and these may include transcripts. *U.S. v. Fitzgerald*, 6 f. App'x 408, 409 (7th Cir. 2001) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)); *see also Griffin v. Illinois*, 351 U.S. 12 (1956). Yet, the absence of transcripts in this case has not been shown to prejudice Petitioner. His Claims are based on the assertion that Norris promised a different sentence than that which resulted. Accordingly, it does not appear that a transcript would aid in proving this claim. Further, even if the transcript of the trial court could have aided Petitioner, he has not sufficiently alleged lack of access. In fact, Petitioner included transcripts in his Motion for Leave to Supplement Appellant's Brief.

(Dkt. No. 66, Ex. Q.) Claim II fails because it does not allege a constitutional violation as required by 28 U.S.C. 2254(d).

*Certificate of Appealability*

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the petitioner show that "reasonable jurists" could resolve the issues differently and that the petitioner's argument "deserve[s] encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Denying the certificate of appealability on procedural grounds is proper only when a "plain procedural bar" exists on which reasonable jurists could not disagree. *Id.* However, as is the case with regard to Claims I, III, and IV, where a plain procedural bar is present and a district court correctly invokes a bar to dispose of those claims, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. *Id*. Petitioner has failed to make a substantial showing of the denial of a constitutional right in the instant Petition. Accordingly, a certificate of appealability shall not issue.

## CONCLUSION

For the reasons stated above, Robert Wharton's Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability is not issued.

Date:    3/31/2014                                                                    
JOHN W. DARRAH
United States District Court Judge